**David P. BAIRD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1454C.**

United States Court of Federal Claims.

June 1, 2006.

David P. Baird, pro se, New Orleans, LA, Plaintiff.

Tara K. Hogan, with whom were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

### OPINION AND ORDER ON MOTION TO DISMISS

WHEELER, Judge.[1]

This case is before the Court on Defendant's February 25, 2005 Motion to Dismiss for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted, filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Court of Federal Claims ("RCFC").[2]  Shortly after Plaintiff filed his Complaint on September 14, 2004, and on four occasions thereafter, the Court suspended proceedings in this case while the parties pursued settlement discussions. Most recently, the Court on March 27, 2006 imposed a stay to allow the parties additional time to prepare a proposed order remanding the case to the Board for Correction of Military Records for the United States Coast Guard.  Because the parties were unable to agree on a proposed order, the Court lifted the stay on May 3, 2006, and now denies in part and grants in part Defendant's Motion to Dismiss.[3]

---

1. This case was transferred to Judge Thomas C. Wheeler on December 5, 2005, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

2. Plaintiff on March 17, 2005 filed a Response (styled "Plaintiff's Opposition To Government's Motion To Dismiss And Request For Discovery") to Defendant's Rule 12 motions.  The Government on April 14, 2005 filed its Reply and Response to Plaintiff's Request for Discovery. Plaintiff on April 25, 2005 filed a Reply renewing his opposition to Defendant's Rule 12 motions and his own request for discovery.  Plaintiff's April 25, 2005 Reply constitutes the final pleading relevant to this Order.

3. The Court grants the Government's Motion to Dismiss with respect to Mr. Baird's alleged Fifth Amendment Due Process violation. (*See* Complaint at 4).  Because the Due Process clause of the U.S. Constitution is not "money-mandating," this Court does not have jurisdiction over such claims.  *See Lawrence v. United States*, 69 Fed.Cl.

## Background

*Pro se* Plaintiff David P. Baird is a retired lieutenant commander in the United States Coast Guard Reserve. Copies of Reserve Orders submitted by Defendant indicate that the Coast Guard recalled Mr. Baird from retirement to active duty for the period June 24, 2001 to September 22, 2001. (Motion to Dismiss at Ex. 1). According to another Reserve Order, the Coast Guard again recalled Mr. Baird from retirement to active duty for the period September 27, 2001 to December 27, 2001. *Id.* at Ex. 2. At the end of the first recall period, on or about September 22, 2001, Plaintiff claims he received verbal orders to *remain* on active duty in the wake of the September 11, 2001 attacks, and was assured that official written orders would be forthcoming. (Complaint at ¶¶ 4, 5, 7, 8). However, because no written order issued until September 27, a gap of four days (September 23, 24, 25, and 26) divides the six-month period during which Mr. Baird served on active duty pursuant to official, written orders.[4]

As a consequence of this our-day gap in written orders the parties now dispute the propriety of Mr. Baird's receipt of active duty pay for September 23–26, 2001. The Government characterizes all such sums as "overpayments," and, through the Coast Guard Personnel Service, has since attempted to recover approximately $1785 from Mr. Baird.[5] (Motion to Dismiss at 2). Mr. Baird has resisted the Government's collection efforts. A second alleged consequence of the gap in Plaintiff's service records is the wrongful forfeiture by Plaintiff of "approximately 22 days of accrued leave" for which he believes he should have been paid upon his eventual discharge. (Complaint at ¶ 10).

Accordingly, Plaintiff alleges in Count One of the Complaint that "[t]he actions of the Coast Guard deprived plaintiff of his rights under law to be paid in accordance with applicable statutes, regulations, and pay manuals." *Id.* at ¶ 15.[6] Count Two of the Complaint alleges a Fifth Amendment Due Process violation, without specificity. *Id.* at ¶ 17. For these harms, Plaintiff requests relief in the form of a judgment against the United States in an unspecified amount, a Court Order requiring the Coast Guard to correct Mr. Baird's military service records, and attorney fees and costs. *Id.* at 5. As noted, the Government has moved the Court to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which this Court can grant relief.

## DISCUSSION

### A.  Standard of Review

This Court will dismiss for lack of subject matter jurisdiction only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Frymire v. United States,* 51 Fed.Cl. 450, 454 (2002) (citing *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)). When a complaint alleges facts that reveal "any possible basis on which the non-movant might prevail, the motion must be denied." *Id.* (quoting *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988)). In reviewing such motions, the Court assumes that all undisputed facts alleged in the complaint are true, and draws all reasonable inferences in favor of the non-movant (here, Mr. Baird). *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Further-

---

550, 554 (2006) ("It is well established that the Due Process Clause of the Fifth Amendment does not obligate the Government to pay money damages.") (citing *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.1995) (citations omitted)). *See also infra* pp. 539–40.

**4.** Mr. Baird submitted to the Court a copy of a letter purporting to be from an M.R. Trammell, Commander Eighth Coast Guard District, confirming that Mr. Baird received verbal orders for the days in question. (Plaintiff's Response at Ex. 5).

**5.** The Government elsewhere lists the amount as $1800. (Defendant's Reply at 1). A copy of an invoice from a collection agency addressed to Mr. Baird indicates a "balance due" in the amount of $1949.56. (Plaintiff's Response at Ex. 2).

**6.** Plaintiff points specifically to 37 U.S.C. § 501(b), (f). (Plaintiff's Response at 2).

more, because Mr. Baird appears *pro se*, the Court reads his claims "liberally," and holds his pleadings to "less stringent standards" than it does "formal pleadings drafted by lawyers." *McSheffrey v. United States*, 58 Fed.Cl. 21, 25 (2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Finally, in resolving factual disputes, the Court is free to examine relevant evidence, including extrinsic evidence such as affidavits and deposition testimony. *Frymire*, 51 Fed.Cl. at 454–55. These special considerations notwithstanding, the Court "will not supply additional facts, or construct a legal theory for a plaintiff that assumes facts that have not been pleaded." *McSheffrey*, 58 Fed.Cl. at 25 (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). Nor however will the Court excuse Mr. Baird of plaintiff's burden to establish this Court's subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir. 2002).

### B.  *Tucker Act Jurisdiction*

■ Owing to the limited nature of this Court's jurisdiction, a plaintiff's first step in establishing jurisdiction here is to demonstrate that his claim meets the requirements of the Tucker Act, 28 U.S.C. § 1491. The Tucker Act defines the scope of this Court's jurisdiction, and waives the federal government's sovereign immunity in certain actions. In relevant part, the Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As a threshold matter, plaintiff must additionally "identify a separate source of substantive law that creates the right to *money damages*." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir. 2005) (emphasis added). "In the parlance of Tucker Act cases, that source must be 'money-mandating.'" *Id.* *Fisher* instructs this Court "at the outset" of an action, to "determine, either in response to a motion by the Government, or *sua sponte* ... whether the Constitutional provision, statute, or regulation [relied upon by a plaintiff] is one that is money-mandating." *Id.* at 1173.[7]

Addressing the scope of it's equitable powers, the Court in *Adair v. United States*, 70 Fed.Cl. 65 (2006) stated the same principle negatively: "this court does not have jurisdiction to grant non-monetary relief in [a] non-bid-protest context 'unless it is tied to and subordinate to a monetary award.'" 70 Fed.Cl. at 66 (citing *Austin v. United States*, 206 Ct.Cl. 719, 723, 1975 WL 22844 (1975)). Indeed, a plaintiff who succeeds in identifying a relevant money-mandating provision of law may then invoke the Court's equitable powers pursuant to 28 U.S.C. § 1491(a)(2). That provision states:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

### C.  *Plaintiff's Allegations*

Against the foregoing jurisdictional requirements, and mindful of the lenient principles pertaining to *pro se* litigants, the Court has reviewed Mr. Baird's pleadings for cognizable claims against the United States. In doing so, the Court analyzed Plaintiff's Com-

---

7. The Supreme Court has defined the test for determining whether a Constitutional provision, statute, or regulation is money-mandating, but not always with identical language. *See Fisher*, 402 F.3d at 1173–74. That test is whether the rule "can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of duties [it] impose[s]," *United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), or whether the rule is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003).

plaint and later filings with the requisite flexibility. *See e.g., Nat'l Center for Mfg. Sciences v. United States,* 114 F.3d 196, 199 (Fed.Cir.1997) ("Notwithstanding the imprecision of the complaint," the Court looks "to the true nature of the action in determining the existence or [absence] of jurisdiction.") (citing *Katz v. Cisneros,* 16 F.3d 1204, 1207 (Fed.Cir.1994)). Under this standard, as long as the Court is able to discern the "basic thrust of the cause," an "inartfully drafted" Complaint will not of itself preclude recovery. *See Fisher,* 402 F.3d at 1175.[8]

In this case, Plaintiff recasts his allegations in a variety of ways throughout his pleadings. For example, Plaintiff states: "this Court should entertain this claim ... under 37 U.S.C. [§ ] 501(g)[.]" (Complaint at ¶ 2); "This action is brought ... to obtain back pay and allowances and any other monies to which [Plaintiff] is entitled ..., correction of his military records, and for any other relief to which he is entitled under law." *Id.* at ¶ 3; "The Plaintiff has received only a portion of his entitlements as a result of the Coast Guard's failure to correct the discrepancy between the two sets of [written] orders during the period between September 23–27, 2001. The pay and allowances authorized ... would have included leave entitlements which were never paid or used." (Plaintiff's Response at 5–6); "This action arises from the collection actions taken by the U.S. Coast Guard against plaintiff, and [from the] failure of the Coast Guard to correct plaintiff's record of service." (Complaint at ¶ 4); "Plaintiff was ... forced to forfeit approximately 22 days of accrued leave as a result of the break in service and after having reached a career cap of 60 days paid leave entitlement." *Id.* at ¶ 10; "Plaintiff noticed [the record of his military service] contained an approximately one year discrepancy in active duty service performed ..., attempted to correct this error, but was told

that his military record had been tampered with[.]" *Id.* at ¶ 12; "plaintiff became aware of other errors of service, including computerized and falsified documents which fictitiously changed [sic] his military service." *Id.;* "The Coast Guard contracted the Department of Treasury and several private collection agencies to collect a debt that the plaintiff believes is without merit and did not reflect accurately the involuntary recall to duty and leave allowances that were not paid." *Id.* at ¶ 13.

Defendant responds that each of Mr. Baird's allegations either fall outside the scope of the Court's jurisdiction, or fail to state a claim upon which relief can be granted. Regarding the monies paid to Mr. Baird in connection with the four day period in dispute, the Government characterizes Mr. Baird's prayer as one for "declaratory relief that he should not have to pay back the $1785 overpayment." That claim therefore is beyond this Court's jurisdiction, the Government argues, because "no money is presently due" Mr. Baird for the days in question. (Motion to Dismiss at 3). Regarding the prayer for payment of accrued and forfeited leave, the Government claims Mr. Baird was already paid for the maximum number of days of accrued leave permitted by statute, and therefore such claim is not one upon which relief can be granted. *Id.* at 8. Regarding Mr. Baird's requests for the correction of his record of military service, the Government argues that such relief is equitable in nature, is not ancillary to an award of money damages, and therefore is outside this Court's jurisdiction. *Id.* at 9.

From the foregoing allegations and responses, the Court discerns the following claims. First, Mr. Baird seeks to have his record of military service corrected with respect to the period during which he was recalled to active duty (June 24, 2001 to December 27, 2001).[9] Second, Mr. Baird

---

8. A corollary concept appears in the context of Torts, which, like purely equitable claims, fall outside this Court's jurisdiction. "The court will not dismiss a claim, the substance of which is within the court's jurisdiction, simply because a party describes it as 'tortious.' Similarly, the court's jurisdiction is not satisfied by a complaint which simply alleges tort causes of action without labeling them as such." *Sumter v. United States,* 61 Fed.Cl. 517, 526 (2004).

9. Mr. Baird also alleges the existence of errors in his service record that fall outside the June—December time period. Specifically, he complains of "fraudulent entries ... made by unidentified persons that were hidden from Plaintiff,

seeks back pay and allowances allegedly forfeited as a result of his service in the absence of written orders between September 23 and September 26, 2001. Third, Plaintiff seeks to enjoin the Coast Guard from continuing its collection efforts relating to the alleged overpayments to Mr. Baird. (For this allegation, Mr. Baird appends a claim for punitive damages for the Coast Guard's alleged violation of the Fair Credit Reporting Act ("FCRA")). Finally, Mr. Baird alleges a violation of his Fifth Amendment Due Process rights, though the specifics of this claim are not clear.

### D. *Rule 12(b)(1) Analysis*

■ Among Plaintiff's claims, only one can possibly result in a monetary award.[10] For that reason, the Court limits its Rule 12(b)(1) analysis to Mr. Baird's claim for back pay and allowances. The government does not dispute Mr. Baird's claim that he received verbal orders to remain on active duty between September 22 and September 26, 2001. Nor does the government contest that Mr. Baird actually served on those dates. The Court therefore accepts that Mr. Baird received and fulfilled verbal orders for purposes of this motion.

The Court also accepts for the same purpose that servicemembers are entitled to pay and allowances, including the accrual of annual leave, while serving on active duty. As a general matter, service members have a statutory right to payment for accrued leave

upon their discharge from the armed services. 37 U.S.C. § 501(b)(1) provides:

A member of the ... Coast Guard ... who has accrued leave to his credit at the time of his discharge, is entitled to be paid in cash or by check on the Treasurer of the United States for such leave on the basis of the basic pay to which he was entitled on the date of the discharge.

Pursuant to section 501(b)(3), however, "the number of days of leave for which payment is made may not exceed sixty, less the number of days for which payment was previously made under this section after February 9, 1976." Relevant to Mr. Baird's allegations, section 501(b)(5)(B) creates an exception to the sixty day ceiling: "The limitation in the second sentence of paragraph (3) ... shall not apply with respect to leave accrued ... by a member of the armed forces in the Retired Reserve while serving on active duty in support of a contingency operation[.]"[11]

In relying on 37 U.S.C. § 501(b), Mr. Baird has plainly invoked a money-mandating statute. *See e.g., Williams v. United States,* 2006 WL 1084002, *2 (Fed.Cl.2006) ("These statutes constitute money-mandating provisions sufficient to invoke the jurisdiction of this court because they would have required the United States to pay [plaintiff] for any unused leave days but for his other-than-honorable discharge.")

Whether Mr. Baird's service during the four-day gap ultimately entitles him to com-

excluded from previous administrative record, and not discovered until September 2000." He further claims to have been illegally excluded from consideration for promotion in 1990. Finally, Mr. Baird claims the Coast Guard altered his "retirement point statements" in 2001 and 2002, and "deleted retirement credits" from his record of service. (Plaintiff's Response at 8).

10. The Court agrees with Defendant that Mr. Baird's requests to have his military records corrected, and to enjoin the Coast Guard from future collection efforts are purely equitable in nature. The Court is not persuaded, however, that Mr. Baird's claims arising under the FCRA necessarily fall outside the scope of its jurisdiction. (*See* Defendant's Reply at 3). The FCRA does not appear, as Defendant suggests, to limit jurisdiction to the District Courts and State courts. Rather, 15 U.S.C. § 1681p provides, "[a]n action to enforce any liability created un-

der this subchapter may be brought in any appropriate United States district court ... *or in any other court of competent jurisdiction[.]*" (emphasis added).

11. Mr. Baird claims that his service pursuant to verbal orders occurred during a contingency operation. 10 U.S.C. § 101(a)(13) defines a "contingency operation" as:

a military operation that ... is designated by the Secretary of Defense as an operation in which members of the armed forces are or may become involved in military actions, operations, or hostilities against an enemy of the United States or against an opposing military force; or ... results in the call or order to, or retention on, active duty of members of the uniformed services under [various statutes], or any other provision of law during a war or during a national emergency declared by the President or Congress.

pensation beyond what he has already received will depend on facts not presently before the Court. Nonetheless, having assumed the undisputed facts in the Complaint to be true, having drawn all reasonable inferences in Plaintiff's favor, and having read his claims "liberally" under the "less stringent standards" applied to *pro se* plaintiffs, the Court cannot say there is no possible basis on which Mr. Baird might prevail in this case. Therefore, Defendant's motion as to jurisdiction must be denied.

### E. *Rule 12(b)(6) Analysis*

■ The Court next turns to Defendant's Motion to Dismiss under RCFC 12(b)(6). That Rule provides for dismissal where a complaint fails to state a claim upon which this Court can grant relief. The standard for dismissal under Rule 12(b)(6) parallels the standard under Rule 12(b)(1). Accordingly, the Court will dismiss for failure to state a claim upon which relief can be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling him relief." *Lechliter v. United States,* 70 Fed.Cl. 536, 542–43 (2006) (citing *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Furthermore, as under Rule 12(b)(1), the Court construes the allegations in the complaint favorably to the pleader, presumes the undisputed factual allegations therein are true, and holds a *pro se* plaintiff's pleadings to the same "less stringent standards." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)).

Central to Defendant's 12(b)(6) motion are the dual arguments that "verbal orders are not sufficient" to entitle a service member to pay, and that, in any event, Mr. Baird has already been paid for the statutory maximum of sixty days' accrued leave under 37 U.S.C. § 501(b). (Motion to Dismiss at 6–8).

Dealing with the second argument first, the Court notes that while Mr. Baird claims he received "only a portion of his entitlements as a result of the Coast Guard's failure to correct the discrepancy between the two sets of [written] orders" between September 23–27, 2001, (Plaintiff's Response at 5–6), the

Government claims otherwise. (Motion to Dismiss at 7–8). Because this factual issue is in dispute, the Court resolves the question in Plaintiff's favor. For purposes of this motion, therefore, the Court finds that Mr. Baird may yet be owed payment for a portion of leave accrued during the four-day period in question.

Regarding the Government's first argument, the Court's review of Coast Guard Pay and Personnel Procedures Manuals and other relevant material has revealed no conclusive authority for the Government's broad proposition that "verbal orders are not sufficient" to entitle a servicemember to pay. To the contrary, the caselaw on this issue tends to support the more practical position that verbal orders, in certain situations, should suffice to bind service members and the government. In *Skaradowski v. United States,* 200 Ct.Cl. 488, 471 F.2d 627 (1973), for example, the court discussed the occasional necessity of recognizing the legality of verbal orders. In that case, the plaintiff received verbal orders to remain on active duty for a period of five days to temporarily assume his absentee commanding officer's duties. As a result of these orders, the plaintiff deferred taking three days of previously scheduled annual leave, and, upon his commanding officer's return, immediately commenced another term of active duty pursuant to previously issued written orders. 200 Ct.Cl. at 491, 471 F.2d 627. After suffering a heart attack, plaintiff more than a year later sought to qualify for retired status and be placed on the Army's Disability Retired List. *Id.* at 493–94, 471 F.2d 627. The Army Board for the Correction of Military Records ultimately denied the plaintiff's request on the ground that there was "insufficient evidence that plaintiff was on active duty during the period he served [in his commanding officer's stead] pursuant to verbal orders[.]" *Id.*

As narrowly stated by the Court of Claims, the issue in *Skaradowski* thus parallels the issue in the present case, i.e., "whether or not plaintiff was on active duty between 1 June 1966 and 5 July 1966." *Id.* As in this case, plaintiff Skaradowski's service "pursuant to [verbal orders], serve[d] as a bridge between the two periods specifically covered

by [written] orders[.]" *Id.* On the evidence presented in that case, the *Skaradowski* Court found the plaintiff "was clearly on active duty during the connective period[.]" [12] The Court noted:

> One can only conjecture as to what effect it would have had on plaintiff's career as an officer in the active reserve, had he disobeyed that order. It is too crabbed a view to suggest that this period was not active duty, and that plaintiff's initial period of active duty had not been "extended by proper authority" just because the order was oral ... and was not later confirmed by written order. The military services could hardly function without competent orders, delivered orally.

200 Ct.Cl. at 495, 471 F.2d 627.[13] The relevance of this reasoning to Mr. Baird's situation in September of 2001 is obvious, and the Court will not speculate as to the consequences had reservists in the armed forces ignored verbal orders in the wake of the September 11, 2001 attacks. Therefore, because Mr. Baird's pleadings allege facts that may, with further development, prove a "set of facts entitling him relief," the Court denies Defendant's Rule 12(b)(6) Motion to Dismiss.

### F. *Remand to the Coast Guard Board for Correction of Military Records*

This Court's remand authority appears at 28 U.S.C. § 1491(2) and in RCFC 56.2(a)(1). Section 1491(2) provides, in relevant part, "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." Similarly, Rule 56.2 provides, "At the request of a party or on its own motion, the court may in any case within its jurisdiction by order remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."

Pursuant to the foregoing authority, and in the interest of affording Mr. Baird with the most complete relief to which he may be entitled, the Court hereby STAYS all proceedings in this case, and REMANDS the case to the Board for Correction of Military Records for the United States Coast Guard. On remand, the Board shall address and resolve the following issues: (1) Whether and to what extent Mr. Baird's record of military service contains errors; (2) whether and to what extent Mr. Baird is entitled to back pay and allowances as a result of his service in the absence of written orders between September 22 and September 26, 2001; and (3) whether and to what extent the United States Coast Guard made overpayments to Mr. Baird in connection with the period between September 22 and September 26, 2001, and whether the Coast Guard's efforts to collect such sums may resume.

The Board shall have 90 days from the date of this order to take the above actions. Pursuant to Rule 56.2(a)(5), counsel for Defendant shall file a status report with the Court 45 days following the date of this order, informing the Court of the status of proceedings on remand. Pursuant to Rule 56.2(b)(3), upon completion of the proceedings before the Board, counsel for Defendant shall file with the Court the result of the Board's decision.

IT IS SO ORDERED.

---

12. In *Skaradowski,* the parties stipulated that the plaintiff received the verbal orders in question and did in fact serve during the "connective period." *See* 200 Ct.Cl. at 494–95, 471 F.2d 627. For purposes of the present motion, the Court assumes the truth of Mr. Baird's assertion that he received verbal orders to active duty and performed as directed.

13. *See also Smith v. United States,* 19 Cl.Ct. 19, 24–25 (1989) (observing that "verbal orders are impliedly authorized" in an Air Force regulation that did not expressly "prohibit verbal orders in any circumstance, but merely counsel[ed] against verbal orders in three categories[.]"). Consistent with caselaw cited herein, Commandant Instruction M3061.1 (June 7, 1996) regarding the Coast Guard's Manpower Mobilization and Support Plan provides strong implicit authority for the issuance of verbal orders. "If emergency conditions necessitate the issuance of oral orders, written orders shall follow as soon as practicable." COMDTINST M3061.1 (JUN 7 1996) at 5–2.